JEFFERSON WHITE *vs.* MUTUAL FIRE ASSURANCE COMPANY OF SPRINGFIELD AND VICINITY.

A policy of insurance on a "dwelling-house and wood-house," described in the application as "occupied for the usual purposes," covers a building, built at one time, with a single frame and roof, and designed for one building, for a carriage-house and wood-house, of which the wood room constitutes two thirds, and is separated from the carriage room by a loose partition extending to the eaves on one side, and half way to the roof on the other; and does not exclude evidence that the whole building was called by the tenants and neighbors the "wood-house."

In the trial of an action on a policy of insurance upon a building in which was a quantity of straw at the time of the fire, the defendants cannot, "for the purpose of showing the condition of the straw at the time," introduce evidence that three weeks previously a

bonfire was made by boys outside of the building, with a trail of straw from it to the building, in which loose straw was then lying.

A hog-pen and hen-house, from three and a half to six feet high, covered with boards, with a partition of boards between them, are not a building within the meaning of an application for insurance, which represents that there are no buildings not disclosed within a certain distance; and evidence that they increased the risk is inadmissible.

The insurance of a landlord who uses reasonable care and diligence in the selection of tenants and the management of the premises is not affected by his tenants keeping straw on the premises, without his knowledge or assent, so as to increase the risk.

ACTION OF CONTRACT on a policy of insurance issued in 1853, for six years, on the plaintiff's " brick dwelling-house and wood-house situated in Chicopee," under the conditions and limitations expressed in the by-laws annexed thereto, one of which provided that " if the assured shall alter or enlarge a building or appropriate it to other purposes than those mentioned in the policy, so as to increase the risk, the same shall become *ipso facto* void."

In the application " to which," by the policy, " reference may be had," the property insured was described as in the policy, and as " occupied for the usual purposes, by a tenant "; and the applicant, under the printed head of " Relative situation as to each other and as to other buildings," made this statement : " House and wood-house connected. No other buildings within four rods except the ice-house."

Answer: the existence of a carriage-house adjoining the wood-house, and of other buildings within four rods of the premises, not disclosed in the application ; and the use of the premises for keeping straw ; all of which increased the risk. Trial in the court of common pleas in Hampden at October term 1856, before *Bishop*, J., who, after verdict for the defendants, signed a bill of exceptions, of which the material parts were as follows :

" There was evidence that the dwelling-house and wood-house building were built by Elihu Adams in 1839 ; the whole of the wood-house building was built at one time, had but one frame, was all under one roof, and Adams testified that it was designed for one building, for a wood-house and carriage-house ; the wood room constituted two thirds or more of the entire building, and was separated from the carriage room by a loose partition, about seven feet high, which extended to the eaves on one

side, and not so high on the other side, leaving a distance of about seven feet between the top of the partition and the ridge-pole. There were large cracks and holes between the boards of the partition, through which one might look from one room into the other; and the carriage room was open on the east side, but the wood room was inclosed on all sides.

' It appeared in evidence that in June 1854, at about three o'clock P. M., a fire was discovered in the carriage room, and consumed the wood-house building, damaged the back part of the dwelling-house, and consumed the ice-house, hog-house and hen-house, hereafter mentioned. It also appeared that in the carriage room there were from four hundred to one thousand pounds of straw, which was scattered about and trod down on the ground, there being no floor in the room, and which had been put there without the knowledge or assent of the plaintiff in the fall or winter previous by one Fuller, who then occupied part of the plaintiff's house, but moved out in the April before the fire, and was succeeded by another tenant. The plaintiff proved that from 1849, when he purchased the premises from Adams, to the time of the fire, no cattle were kept in said carriage room, and no straw, hay or other similar articles were put there, except the straw put there by Fuller, as before stated. The plaintiff resided in Enfield, twelve or fifteen miles from the insured premises, and never personally occupied said premises, but rented them, and visited them from time to time for the purpose of collecting rents and looking after the premises.

" The plaintiff offered to prove by several witnesses, some of whom had been tenants of the premises, and others near neighbors, that the building in which the wood-house and carriage room were, had always been commonly known and called as the ' wood-house.' But the court rejected the evidence.

" The defendants called Mrs. Jewett, who testified that she lived nearly opposite the insured premises; that about three weeks before the fire she saw from her house a bonfire near the carriage-house; that she went out, and found that the fire was made of straw, and that there was a trail of straw from the carriage-house to the fire; that she separated the burning from the

other straw, and put the fire out; that the carriage-house was open, and loose straw was lying there; that her little boy and the child of one of the tenants made the fire. To this evidence the plaintiff objected; but for the purpose of showing the condition of the straw at the time, and for no other purpose, the testimony was admitted.

" It appeared in evidence that in the rear of the building con taining the wood room and carriage room, and separated from said building by a passage way three feet wide, was an ice· house, and that in the rear of the ice-house, and distant from it one or two feet, was a small structure, called by some of the witnesses a hog-house and hen-house, being three and a half feet high in the rear, and six feet high in front, and covered by boards, but not shingled or battened, and with a board fence or partition between the hog-house part and the hen-house part. It extended towards the barn and to within about twenty four feet of it."

The defendants were permitted, notwithstanding the plaintiff's objection, to introduce evidence that the hog-house and hen-house increased the risk, and would, if disclosed, have increased the premium.

" The plaintiff contended that, as it appeared from the application that the insured premises were to be occupied by tenants, there was an implied agreement on the part of the defendants that if the plaintiff used reasonable care and diligence in the selection of trustworthy tenants, and in the general management of the premises, the insurance should not be affected by acts done by the tenants without his knowledge or consent; and he asked the court to instruct the jury that, if they were satisfied that the plaintiff used such reasonable care and diligence, and did not assent to or know of Fuller's putting and keeping the straw in the carriage-house, the fact that the straw was thus put and kept there by Fuller would not prevent the plaintiff from recovering, even if the straw being there did increase the risk. But the court declined so to instruct the jury.

" The plaintiff also asked the court to instruct the jury that, as the policy and by-laws nowhere specifically prohibited the

48*

keeping of straw on the premises, it was not a violation of any of the provisions of said policy and by-laws if the plaintiff's tenant did keep said straw there, provided he kept it only in reasonable quantities, and for his own use. But the court declined so to instruct the jury ; and instructed them, that if the straw materially increased the risk, it was a violation of the policy, and worked a forfeiture of the plaintiff's claim under it.

" To the foregoing rulings and instructions the plaintiff excepts."

*E. W. Bond*, for the plaintiff, to the point that the court erred in refusing to give the instructions requested, cited *Indian Orchard Canal Co.* v. *Sikes, ante,* 562 ; *Gamwell* v. *Merchants' & Farmers' Mutual Fire Ins. Co.* 11 Cush. 167 ; *Loud* v. *Citizens' Mutual Ins. Co.* 2 Gray, 221 ; *Gates* v. *Madison County Mutual Ins. Co.* 1 Selden, 469.

*F. Chamberlin,* (*R. A. Chapman* with him,) for the defendants. 1. The application represented that the property insured was a house and wood-house, " occupied for the usual purposes." The carriage-house was a distinct building, used for a different and more hazardous purpose, which, not being disclosed, avoided the policy. *Rice* v. *Tower,* 1 Gray, 426. *Webber* v. *Eastern Railroad,* 2 Met. 147. It was built for a carriage-house, and used for storing straw, which is not a " usual purpose " of a house or wood-house. Evidence that it was sometimes called by neighbors the " wood-house " was inadmissible.

2. Mrs. Jewett's testimony was properly admitted to show for what purpose the carriage room had been used.

3. The representation that there was " no other buildings within four rods " was a material representation, if not a warranty ; and the question whether the hog-house and hen-house materially increased the risk, was properly submitted to the jury.

4. The application, while it stipulated that the premises should be used for the " usual purposes," in terms contemplated their occupation by tenants. For the acts of such tenants, paying rent to the plaintiff, and subject to his control, the plaintiff is responsible. *Rice* v. *Tower,* 1 Gray, 426. *Merriam* v. *Mid-*

*dlesex Mutual Fire Ins. Co.* 21 Pick. 162. *Jones Manuf. Co.* v. *Manufacturers' Mutual Fire Ins. Co.* 8 Cush. 82. *Murdoch* v. *Chenango County Mutual Ins. Co.* 2 Comst. 210. They were not mere trespassers, or occupants for a special purpose under a license which they abused, as in *Loud* v. *Citizens' Ins. Co.* 2 Gray, 221.

THOMAS, J. 1. The description of the premises in the evidence, fully detailed in the bill of exceptions, very clearly shows that the " wood-house " covered and included the room in which the straw was deposited. We perceive no ground for saying that this room, designed for a carriage room, was a building, so as to make the application false when it stated there was no other building within four rods of the premises insured except the ice-house. But the evidence that the building which covered and included the wood room and carriage room was known and called by the tenants and neighbors the " wood-house," though not necessary, was competent.

2. The evidence of Mrs. Jewett as to the bonfire of straw three weeks before the fire was immaterial, because the fact it tended to prove, and to which its effect was limited by the learned judge, was itself immaterial. From its manifest tendency also, to prejudice the cause of the plaintiff, it should have been excluded.

3. Whether the pig-pen and hen-house were buildings within the terms of the application — " no other buildings within four rods " — would depend upon their size and structure. Upon the evidence given in the bill of exceptions they were not buildings, within the meaning of the application; and evidence as to increase of risk from them was not competent.

4. The instructions prayed for should in form or substance have been given. There was nothing in the acts of the tenant, as proved, which avoided the policy. The instructions given were unsound, for the same reason. *Exceptions sustained.*